UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x

JUHUA HAN,

                        Plaintiff,                    Civil action No. 19-CV-6265 (RA)

    v.

KUNI'S CORPORATION D/B/A IKINARI STEAK
USA, and PEPPER FOOD SERVICE CO., LTD.,

                        Defendants.

---------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT PEPPER FOOD SERVICE CO., LTD.

**INGRAM YUZEK GAINEN CARROLL & BERTOLOTTI, LLP**
150 East 42nd Street, 19th Floor
New York, New York 10017
Telephone (212) 907-9600
Facsimile (212) 907-9681

ATTORNEYS FOR DEFENDANT
PEPPER FOOD SERVICE CO. LTD.

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF RELEVANT FACTS .......................................................................... 2

ARGUMENT .......................................................................................................................6

   I.   THE COMPLAINT MUST BE DISMISSED
      BECAUSE PFS IS NOT HAN'S "EMPLOYER" ...........................................................8

        A.  PFS and Kuni's Are Not a Single Employer Under Rule 12(b)(1) ........................8

        B.  PFS and Kuni's Are Not a Single Employer Under Rule 12(b)(6) ......................15

        C.  PFS and Kuni's Are Not Joint Employers
            Under Either Rule 12(b)(1) or Rule 12(b)(6) ......................................................19

        D.  PFS is not Han's Employer Under the NYSHRL or the NYCHRL
            Under Either Rule 12(b)(1) or Rule 12(b)(6) ......................................................20

   II.  THE TITLE VII CLAIM MUST BE DISMISSED BECAUSE
      HAN FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES .......................22

CONCLUSION ..................................................................................................................25

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                  **Pages**

*AVC Nederland B.V. Atrium Inv. P'ship*,
  740 F.2d 148 (2d Cir. 1984)...................................................................................7

*Arculeo v. On-Site Sales & Mktg., LLC*,
  425 F.3d 193 (2d Cir. 2005)..................................................................................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................................15

*Ayala v. U.S. Postal Serv.*,
  No. 15-CV-4919 (VSB), 2017 WL 1234028 (S.D.N.Y. Mar. 31, 2017)................................24

*Balut v. Loral Elec. Sys.*,
  988 F. Supp. 339 (S.D.N.Y. 1997), *aff'd*, 166 F.3d 1199 (2d Cir. 1998) ..............................13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................................15

*Brathwaite v. Sec. Indus. Automation Corp.*,
  No. 06 CV 0300 (ERK) (JMA), 2006 WL 8439237 (E.D.N.Y. Dec. 1, 2006) .............6, 16, 18

*Brower-Coad v. Fundamental Brokers, Inc.*,
  856 F. Supp. 147 (S.D.N.Y. 1993) .........................................................................9

*Chui-Fan Kwan v. Sahara Dreams Co. II Inc.*,
  No. 17-CV-4058 (RA), 2018 WL 6655607 (S.D.N.Y. Dec. 19, 2018).......................7, 15, 19

*Collazo v. BBDO NY*,
  No. 96 Civ. 9507 (HB), 1997 WL 746447 (S.D.N.Y. Dec. 3, 1997),
  *aff'd*, 165 F.3d 13 (2d Cir. 1998)............................................................................16

*Darden v. DaimlerChrysler N. Am. Holding Corp.*,
  191 F. Supp. 2d 382 (S.D.N.Y. 2002)............................................................ *passim*

*Dewey v. PTT Telecom Netherlands, U.S., Inc.*,
  Civ. A. No. 94 Civ. 5983 (HB), 1995 WL 425005 (S.D.N.Y. July 19, 1995),
  *aff'd*, 101 F.3d 1392 (2d Cir. 1996)............................................................... *passim*

*Fenner v. News Corp.*,
  No. 09 Civ. 09832 (LGS), 2013 WL 6244156 (S.D.N.Y. Dec. 2, 2013) ....................9, 13, 14

*Fried v. LVI Services, Inc.*,
  No. 10 Civ. 9308 (JSR), 2011 WL 2119748 (S.D.N.Y. May 23, 2011)...........16-17, 17-18, 20

ii

*Goodman v. Port Authority of N.Y. and N.J.*,
  850 F. Supp. 2d 363 (S.D.N.Y. 2012)......................................................................24

*Griffin v. Sirva, Inc.*,
  29 N.Y.3d 174 (2017) ............................................................................................21

*Hammond v. Bloom New York*,
  No. 00 Civ. 7137 (BSJ), 2001 WL 789295 (S.D.N.Y. July 12, 2001) ....................7

*Johnson v. Palma*,
  931 F.2d 203 (2d Cir. 1991)............................................................................22, 23

*Lehman v. Bergmann Assocs., Inc.*,
  11 F. Supp. 3d 408 (W.D.N.Y 2014) ...............................................................6, 15

*Lima v. Addeco*,
  634 F. Supp. 2d 394 (S.D.N.Y. 2009)....................................................................20

*Lopez v. Acme Am. Envtl. Co. Inc.*,
  No. 12 Civ. 511 (WHP), 2012 WL 6062501 (S.D.N.Y. Dec. 6, 2012) ..................10

*Lusk v. Foxmeyer Health Corp.*,
  129 F.3d 773 (5th Cir. 1997) ..........................................................................12, 20

*Meng v. Ipanema Shoe Corp.*,
  73 F. Supp. 2d 392 (S.D.N.Y. 1999)................................................................12, 20

*Murray v. Miner*,
  74 F.3d 402 (2d Cir. 1996)......................................................................................9

*Pani v. Empire Blue Cross Blue Shield*,
  152 F.3d 67 (2d Cir. 1998)....................................................................................16

*Perez v. Int'l Bhd. of Teamsters, AFL-CIO*,
  No. 00 Civ. 1983 (LAP) (JCF), 2002 WL 31027580 (S.D.N.Y. Sept. 11, 2002)..........7, 16, 24

*Popat v. Levy*,
  253 F. Supp. 3d 527 (W.D.N.Y. 2017) ..................................................................21

*Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*,
  896 F.2d 674 (2d Cir. 1990)....................................................................................8

*Robins v. Max Mara, U.S.A., Inc.*,
  923 F. Supp. 460 (S.D.N.Y. 1996) ........................................................................21

*Ruiz v. New Avon LLC*,
No. 18-CV-9033 (VSB), 2019 WL 4601847 (S.D.N.Y. Sep't. 22, 2019) ...................... *passim*

*Schade v. Coty, Inc.*,
No. 00 Civ. 1568 (JGK), 2001 WL 709258 (S.D.N.Y. June 25, 2001) .......................... *passim*

*State Div. of Human Rights v. GTE Corp.*,
109 A.D.2d 1082 (4th Dep't 1985) ....................................................................................21

*Stinson v. City Univ. of New York*,
No. 17-CV-3949 (KBF), 2018 WL 2727886 (S.D.N.Y. June 6, 2018) ...................................17

*Turley v. ISG Lackawanna, Inc.*,
774 F.3d 140 (2d Cir. 2014) ........................................................................................6, 9, 20

*Urena v. Swiss Post Sols., Inc.*,
No. 16 Civ. 1998 (LGS), 2016 WL 5173389 (S.D.N.Y. Sept. 21, 2016) .........................20, 21

*Wells Fargo Bank N.A. v. Wrights Mill Holdings*, LLC,
127 F. Supp. 3d 156 (S.D.N.Y. 2015) ..............................................................................16

**Statutes and Rules**

29 U.S.C. § 206(d)(1) ...........................................................................................................6

42 U.S.C. § 1981 ...................................................................................................................6

42 U.S.C. § 2000e-2(a)(1) ......................................................................................................6

42 U.S.C. § 2000e-5(e) .........................................................................................................22

Exec. Law § 296(1) ................................................................................................................6

Fed. R. Civ. P. 8(f) ................................................................................................................8

Fed. R. Civ. P. 12(b)(1) ................................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6) ................................................................................................. *passim*

Fed R. Evid. 201 ...................................................................................................................16

N.Y.C. Admin. Code § 8-107(1)(a) ......................................................................................6

## PRELIMINARY STATEMENT

Defendant Pepper Food Service Co. Ltd. ("PFS") respectfully submits this memorandum of law in support of its motion to dismiss plaintiff Juhua Han ("Han")'s complaint ("Complaint") under Fed. R. Civ. P. 12(b)(1) and (b)(6).

The crux of this motion turns on whether PFS can be found to be Han's "employer." Setting aside the factual accuracy of the Complaint (which is and will be heavily disputed if the present motion is not granted), PFS does not belong in this case. Han was employed by defendant Kuni's Corporation d/b/a Ikinari Steak USA ("Kuni's"). Although Kuni's is a wholly-owned subsidiary of PFS, PFS, a Japanese company located in Tokyo, Japan, was never Han's employer. Indeed, there is a strong presumption against finding a parent corporation to be the employer of the subsidiary's employee. An employee of one will be deemed to be the employee of the other only under extraordinary circumstances, which do not exist here.

To overcome this simple fact and this motion to dismiss, Han must allege sufficient facts to show a plausible claim that PFS and Kuni's constitute a single or joint employer under the seven federal, state, and city laws enumerated in the Complaint. The critical question to ask is which entity ultimately decided to engage in the allegedly discriminatory act at issue, and with respect to this critical question, the Complaint contains no facts to support PFS's involvement, and provides only threadbare and conclusory allegations to implicate PFS's integration with Kuni's. Essentially all that Han alleges is that PFS should be held jointly liable because it is Kuni's parent; the two shared a common purpose; and a couple of PFS's directors either worked at Kuni's or interviewed Han. But none of these allegations is sufficient to establish that the two separate companies constitute a single or joint employer, because the Complaint is lacking in facts showing that the companies' operations were interrelated, their labor relations were

1

centralized, or that PFS exerted excessive control over Kuni's employment practices. That a couple of PFS's senior members held roles at Kuni's is perfectly common in a global company like PFS, and does not demonstrate any excessive control over Kuni's beyond that of a normal parent-subsidiary relationship, especially where Han fails to allege that those members were acting in their capacities as directors of PFS.

PFS also moves to dismiss Han's Title VII claim because she failed to exhaust her administrative remedies. A prerequisite to commencing a Title VII claim is to file a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") naming the defendant. Here, Han's charge did not name PFS as a defendant, which precludes her from proceeding with this action against PFS, especially since she had an able employment attorney assisting her with the charge. The identity of interest exception fails to apply here because Han clearly knew about PFS at the time she filed her charge and yet she still failed to name it, and also because PFS and Kuni's interests are not shown to be so similar given the lack of control or involvement PFS had in Kuni's labor relations, despite its parent-subsidiary relationship.

## STATEMENT OF RELEVANT FACTS

Han, a female individual of Chinese descent, alleges that she was employed by Kuni's and PFS (collectively, the "Defendants") from July 15, 2017[1] to July 26, 2018. (Declaration of Mioko C. Tajika ("Tajika Decl.") Ex A, Complaint ("Compl.") ¶¶ 16, 18.) Although she claims she interviewed for the "General Manager" position, she alleges that the position was advertised as a "Restaurant Manager" position with a starting salary between $60,000 and $80,000. (Compl. ¶¶ 19, 20, 22.) Han alleges she was first interviewed on May 19, 2017 by Takashi Tsuchiyama, then-President of Kuni's, who is alleged to have ownership interest in both Kuni's and PFS, and is also on the board of PFS. (Compl. ¶¶ 22, 23, 34.) Han alleges that Tsuchiyama recommended

---

[1] The Complaint actually alleges "July 15, 201**9** to July 26, 2018," but the reference to 2019 is a typographical error.

her for a second interview with Kunio Ichinose, the founder, CEO, President, and Representative Director of PFS, who allegedly approved of her hiring.  (Compl. ¶¶ 26, 27, 34.)

Tsuchiyama extended the job offer by phone, which consisted of a three-month probationary period as "Assistant Kitchen Staff" with a pay rate of $20 per hour, followed by a General Manager position with an annual salary in the range of $100,000 to $150,000.  (Compl. ¶ 28.)  Han alleges that this verbal job offer conflicted with the subsequent written offer letter providing for an "Assistant Kitchen Manager" position at $20 per hour.  (Compl. ¶ 29.)  Han claims that Tsuchiyama assured her that she would be promoted to General Manager after the mandatory three-month probationary period.  (Compl. ¶ 30.)  She allegedly accepted the position on June 13, 2017 based on Tsuchiyama's representations.  (Compl. ¶ 31.)

In September 2017, Han alleges she discovered that two male employees doing the same work as she did were receiving a higher pay and were not required to go through a probationary period.  (Compl. ¶ 36.)  Han alleges that one earned $80,000 and the other earned $52,000; their titles were "Cook Assistant Manager" and "Assistant Floor Manager" but were essentially performing the same duties as her; and that both were promoted to the General Manager position within a few months of being hired, even though they lacked comparable experience in the hospitality industry as her.  (Compl. ¶ 37.)  When Han complained to Tsuchiyama about the above, she alleges he told her that she would get a raise effective October 1, 2017[2] to $25 an hour, but that it was not her business how he paid his employees.  (Compl. ¶¶ 39, 40, 43-45.)  Han also alleges that Tsuchiyama denied making salary assurances to her.  (Compl. ¶ 46.)  She "sent an email to Headquarters of Pepper Food Service Co Ltd. in Japan to inform them" of her alleged problems, "to which they did not respond."  (Compl. ¶ 47.)

---

[2] The Complaint actually alleges "October 1, 201**8**," but the reference to 2018 is a typographical error.

Han alleges next that Kuni's Operating Manager told her that if she would not accept the pay raise, she should resign.  (Compl. ¶ 48.)  Han also discussed her concerns with Kuni's Human Resources Manager, who was sympathetic but allegedly told her that the company did not feel obliged to follow through on its promises due to her visa situation.  (Compl. ¶¶ 49, 50.) Han alleges that she decided to accept the pay raise because she was concerned about losing her job and her immigration status.  (Compl. ¶ 51.)

Han's title was then changed to "Operating Specialist."  (Compl. ¶ 52.)  Despite her job title, Han alleges her duties were largely aligned with those of a General Manager.  (Compl. ¶¶ 53-54.)  And despite what she describes to be her good job performance, Han alleges she was discriminated against on the bases of sex, race, national origin, and/or immigration status. (Compl. ¶ 56.)  In support of these claims, Han alleges the following additional allegations:

(a)     Kuni's HR Manager told her that her visa status precluded her from leaving the job and required her to perform any assignments given to her at the rate of pay offered to her (Compl. ¶ 57);

(b)     she was often pushed to do job assignments unrelated to her duties (Compl. ¶ 58);

(c)     upon information and belief, starting in August 2017, she was the only employee not given a company laptop (Compl. ¶ 59);

(d)     Tsuchiyama told Han that they were only going to hire managers whom were Japanese male or American citizens (Compl. ¶ 65);

(e)     in October 2017, Kuni's hired four male employees as General Managers with a $63,000 annual salary even though some of them did not have prior general manager experience and notwithstanding that Han had five years prior experience as a manager in the hospitality industry (Compl. ¶¶ 61-63);

(f)     upon information and belief, all male employees at Kuni's were regularly promoted within approximately two months of being hired or were hired at higher positions without undergoing any probationary period, regardless of their experience level (Compl. ¶ 68);

4

     (g)      she was qualified to become a General Manager because Defendants directed her to train the male employees hired as General Managers who were less experienced and qualified than her (Compl. ¶ 64); and

     (h)      the only woman in a higher position at Kuni's was a Japanese woman.  (Compl. ¶ 69).

In May 2018, Tsuchiyama was replaced by Hideki Kawano as Kuni's President.  (Compl. ¶ 73.)  When Han complained to him, Kawano apparently responded by offering her an annual salary of $55,000.  (Compl. ¶ 74.)  Yet this response did not satisfy Han, who chose to resign, claiming that she was constructively discharged.  (Compl. ¶¶ 82-83.)

The Complaint was filed on July 5, 2019.  PFS received a copy of the Complaint at its Tokyo Headquarters on November 5, 2019.  (Declaration of Hiroto Saruyama ("Saruyama Decl.") ¶ 4.)  The Complaint's allegations against PFS are sparse.  Han refers to "Defendants" collectively as her employer and that they "constitute a single integrated enterprise with respect to the operations of Ikinari Steak restaurants" (Compl. ¶ 33), but at other times, she only refers to "the company" as her employer.  (*See, e.g.*, Compl. ¶¶ 59, 68, 69, 80, 82.)  The allegations Han make in support of her single employer theory are:

     (a)    Kuni's is a wholly-owned subsidiary of PFS (Compl. ¶ 4);

     (b)    Tsuchiyama told Han that "the Japanese parent had an ambitious plan to expand the Ikinari Steak chain to the United States" (Compl. ¶ 33);

     (c)    Defendants had "overlapping ownership and interrelated operations."  (Compl. ¶ 34.)  The overlapping ownership appears to refer to the parent-subsidiary relationship of the Defendants.  The basis for claiming that their operations are interrelated is unclear; and

     (d)    "Defendants maintained a centralized control of labor relations" based on the claim that Ichinose, the CEO, President, and Representative Director of PFS, interviewed and hired her, and because Tsuchiyama, who was then-President of Kuni's, was also on the board of PFS.  (Compl. ¶ 34.)

Kuni's filed its answer to the Complaint on September 30, 2019 (Tajika Decl. Ex. B), and the action was automatically referred to the Court's mediation program.  The present motion follows the parties' failed mediation session on December 11, 2019.  Even though it had not appeared in the case yet, PFS participated in the mediation subject to a stipulation and order providing, among other things, that its participation would not be deemed a waiver of PFS's Rule 12 objections.  (*See* Stipulation and Order, ECF Docket No. 20.)

## ARGUMENT

To prevail on any of her seven claims, Han must allege and prove that PFS was her employer.  *See* Title VII (42 U.S.C. § 2000e-2(a)(1) (proscribing discriminatory conduct by "employer")); Equal Pay Act (29 U.S.C. § 206(d)(1)) (proscribing discriminatory pay on the basis of sex upon "employer"); New York Equal Pay Act ("New York's Equal Pay Act is analyzed under the same standards applicable to the federal Equal Pay Act," *Lehman v. Bergmann Assocs., Inc.*, 11 F. Supp. 3d 408, 420 n.6 (W.D.N.Y 2014)); New York State Human Rights Law ("NYSHRL") (Exec. Law § 296(1)) (proscribing unlawful discriminatory practice by "employer"); New York City Human Rights Law ("NYCHRL") (N.Y.C. Admin. Code § 8-107(1)(a) (same)). With respect to Han's Section 1981 claim, 42 U.S.C. § 1981, while the statute "permits a plaintiff, under certain circumstances, to sue persons other than employers," *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 151 n.6 (2d Cir. 2014), absent a showing of "'some affirmative link to causally connect [PFS] with the discriminatory action'" amounting to more than ordinary negligence, *Brathwaite v. Sec. Indus. Automation Corp.*, No. 06 CV 0300 (ERK) (JMA), 2006 WL 8439237, at *5 (E.D.N.Y. Dec. 1, 2006) (citation omitted), which is not alleged here, Han is required to establish that PFS was her employer.  *Turley*, 774 F.3d at 155 n.13 (applying single employer theory to Section 1981 claim).

Some courts in this district have analyzed the issue of whether or not a defendant is the plaintiff's employer as a challenge to this Court's subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), *see, e.g., Perez v. Int'l Bhd. of Teamsters, AFL-CIO*, No. 00 Civ. 1983 (LAP) (JCF), 2002 WL 31027580, at *3 (S.D.N.Y. Sept. 11, 2002); *Hammond v. Bloom New York*, No. 00 Civ. 7137 (BSJ), 2001 WL 789295, at *3 (S.D.N.Y. July 12, 2001); *Dewey v. PTT Telecom Netherlands, U.S., Inc*., Civ. A. No. 94 Civ. 5983 (HB), 1995 WL 425005, at *1 (S.D.N.Y. July 19, 1995) (citation omitted), *aff'd*, 101 F.3d 1392 (2d Cir. 1996); while other courts have analyzed the issue under a Fed. R. Civ. P. 12(b)(6) motion for failure to state a claim.  *See*, *e.g*., *Ruiz v. New Avon LLC*, No. 18-CV-9033 (VSB), 2019 WL 4601847, at *10 (S.D.N.Y. Sep't. 22, 2019); *Chui-Fan Kwan v. Sahara Dreams Co. II Inc.*, No. 17-CV-4058 (RA), 2018 WL 6655607, at *2 (S.D.N.Y. Dec. 19, 2018) (Abrams, J.).  Thus, "[t]here is some uncertainty in the case law" on whether the question concerns this Court's subject matter jurisdiction, or it concerns an element of the plaintiff's claim.  *Darden v. DaimlerChrysler N. Am. Holding Corp*., 191 F. Supp. 2d 382, 391 (S.D.N.Y. 2002) (discussing conflict in the case law).

Nevertheless, it has been stated that "when the contested basis of federal jurisdiction is also an element of plaintiff's asserted federal claim," the claim may be dismissed for lack of jurisdiction "when it appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous."  *AVC Nederland B.V. Atrium Inv. P'ship*, 740 F.2d 148, 152-153 (2d Cir. 1984).  Accordingly, PFS files this motion under Rules 12(b)(1) and 12(b)(6) because the Complaint's allegations concerning PFS's status as Han's employer appear to have been made solely for the purpose of obtaining jurisdiction, or is otherwise wholly insubstantial and frivolous.  To the extent that the Court finds the allegations

sufficient for jurisdictional purposes, however, this motion should be analyzed under Rule 12(b)(6).

## POINT I

### THE COMPLAINT MUST BE DISMISSED
### BECAUSE PFS IS NOT HAN'S "EMPLOYER"

#### A.  PFS and Kuni's Are Not a Single Employer Under Rule 12(b)(1)

A Rule 12(b)(1) motion to dismiss challenges this Court's subject matter jurisdiction to adjudicate the case.  The Court construes the complaint broadly and liberally in accordance with Fed. R. Civ. P. 8(f), "'but argumentative inferences favorable to the pleader will not be drawn.'" *Dewey*, 1995 WL 425005, at *1; *see also Darden*, 191 F. Supp. 2d at 389 ("in resolving a challenge to subject matter jurisdiction, the Court is not obligated to draw inferences in favor of the plaintiff.").  "The mover and the pleader may use affidavits and other materials beyond the pleadings themselves in support of, or in opposition to, a challenge to subject matter jurisdiction." *Dewey*, 1995 WL 425005, at *1.  Once challenged, the burden of establishing jurisdiction lies with the party asserting jurisdiction; here, Han.  *Id*.

Because dismissal of an action for lack of subject matter jurisdiction will render all other accompanying motions moot, a court confronted with a motion to dismiss under Rule 12(b)(1) as well as on other grounds should consider the Rule 12(b)(1) challenge first.  *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

Han lumps PFS together with Kuni's as "Defendants" and claims that they both employed her.  (Compl. ¶ 18.)  But "[l]umping the two Defendants together under one name is nothing more than window dressing."  *Ruiz*, 2019 WL 4601847, at *13.  To make out her single employer theory, Han must allege sufficient facts to justify holding PFS liable for the acts of Kuni's.  The same standard for the single employer theory often discussed in the context of Title

VII cases have been applied to claims under the Equal Pay Act, as well as Section 1981, and even NYSHRL cases. *See Turley*, 774 F.3d at 155 n.13 (applying test to Section 1981 claim without analysis, as well as NYSHRL); *Brower-Coad v. Fundamental Brokers, Inc.*, 856 F. Supp. 147, 150 n.6 (S.D.N.Y. 1993) (applying test to Equal Pay Act and NYSHRL claims).[3]

"There is a strong presumption that a parent is not the employer of its subsidiary's employees." *Fenner v. News Corp.*, No. 09 Civ. 09832 (LGS), 2013 WL 6244156, at *9 (S.D.N.Y. Dec. 2, 2013). Thus, "[c]ourts do not readily find that related entities are single employers in discrimination cases." *Dewey*, 1995 WL 4250005 at *2 (citation omitted). It is well-established that a corporation is permitted to organize "so as to isolate liabilities among separate entities," and the employees of one entity will be treated as the employees of a related entity only "under extraordinary circumstances." *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996). In this Circuit, four factors determine whether the two entities can be treated as a single employer for purposes of finding shared liability for the employment acts of one entity: (1) interrelated operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership. *Id.* The most important factor is the degree of centralized control of labor relations, and the critical question is: "'[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?'" *Perez*, 2002 WL 31027580, at *3 (citation omitted).

Here, this motion should be granted because Han fails to make out a plausible claim for single employer liability. Starting with the first prong, interrelation of operations, a court considers the following factors: (1) whether the parent was involved in the subsidiary's daily decisions relating to production, distribution, marketing, and advertising; (2) whether the two entities shared employees, services, records and equipment; (3) whether the entities commingled

---

[3] See Section I.C. below for a different test that has been applied to NYSHRL and NYCHRL claims.

bank accounts, accounts receivable, inventories, and credit lines; (4) whether the parent maintained the subsidiary's books; (5) whether the parent issued the subsidiary's paychecks; and (6) whether the parent prepared and filed the subsidiary's tax returns. *Schade v. Coty, Inc*., No. 00 Civ. 1568 (JGK), 2001 WL 709258, at *7 (S.D.N.Y. June 25, 2001). For this prong, "courts look to factors such as common offices, long-distance shipping, bank accounts, payroll and shared facilities rather than to an overlap of personnel as indicia of integration." *Dewey*, 1995 WL 425005, at *3.

All that Han alleges to indicate the interrelatedness of operation is that PFS "had an ambitious plan to expand the Ikinari Steak chain to the United States" with which she was hired to help. (Compl. ¶ 33.) But "[a]llegations of common ownership and common purpose, without more, do not answer the fundamental question of whether . . . [PFS] controlled [Han] as employee[]." *Lopez v. Acme Am. Envtl. Co. Inc*., No. 12 Civ. 511 (WHP), 2012 WL 6062501, at *4 (S.D.N.Y. Dec. 6, 2012). Han does not allege the existence of any of the above factors, and no facts to suggest that the two entities shared offices, daily decisions, or finances. PFS and Kuni's are in separate countries and share no address, office, employees, records, or equipment. (Saruyama Decl. ¶¶ 2, 5-7.) They do not commingle bank accounts (PFS has no bank account in the United States) or share payroll accounts, credit lines, accounts receivable, or inventories. (Saruyama Decl. ¶¶ 6-7.) Kuni's maintains its own corporate and financial records, such as ledgers and books, and prepares and files its own tax return independently of PFS. (Saruyama Decl. ¶ 7.) As a corporate parent, PFS may check Kuni's books from time to time, but it is not involved in the preparation or maintenance of those records. (Saruyama Decl. ¶ 7.) Kuni's pays its own taxes and expenses, and pays its own employees' paychecks, except with respect to expatriate employees who were assigned to Kuni's by PFS, and as to them, Kuni's reimburses

PFS.  (Saruyama Decl. ¶¶ 7-8.)  Han is unable to factually plead or show the existence of interrelatedness of operations.

Turning to the most important issue, the existence of a centralized control of labor relations, the "relevant factors include whether the subsidiary has a separate human resource department, whether the subsidiary 'establishes its own policies and makes its own decisions as to the hiring, discipline, and termination of its employees,' whether employment applications are sent to the parent, whether the subsidiary must clear all major employment decisions with the parent, and whether the parent routinely shifts employees between the two companies." *Schade*, 2001 WL 709258, at *8 (internal citations omitted).

Han alleges none of the above except two purported facts to support this factor in her Complaint.  But this prong does not favor Han because no centralized control of labor exists.  Kuni's and PFS maintains separate HR departments.  (Saruyama Decl. ¶ 9.)  Kuni's and PFS have different employment rules and policies, and Kuni's has its own Employee Handbook.  (Saruyama Decl. ¶ 9.)  Kuni's has the sole discretion and authority to hire and fire its employees, and PFS is not informed of these hiring or firing decisions.  (Saruyama Decl. ¶ 9.)  Kuni's does not send employment applications to PFS for the purpose of seeking PFS's approval with respect to Kuni's hiring decisions.  (Saruyama Decl. ¶ 9.)  Kuni's alone determines its employees' compensation without informing PFS or obtaining its approval, and Kuni's alone makes decisions regarding promotions, demotions, discipline, and terminations of its employees.  (Saruyama Decl. ¶ 9.)  The two companies have separate benefits packages which are administered independently of each other.   (Saruyama Decl. ¶ 9.)  Kuni's alone conducts performance evaluations of its employees and otherwise supervises their job performance, and Kuni's alone maintains its employees' records.  (Saruyama Decl. ¶ 9.)  PFS has not engaged in

any of these functions and does not have the authority to perform any of these tasks.  (Saruyama Decl. ¶ 9.)

The two allegations Han does make are insufficient to show a centralized control of labor relations.  First, Han alleges that Tsuchiyama, then-President of Kuni's, who allegedly made the promise to pay her $100,000-150,000, is a board member of PFS.  Second, she alleges that Ichinose, who is PFS's President/CEO/Representative Director, interviewed and hired her.  But neither of these allegations is sufficient to find this prong in her favor.

PFS is a global Japanese company with subsidiaries and affiliates in locations including Taiwan, Singapore, China, Indonesia, Australia, Thailand, Philippines, Malaysia, Canada, and the United States.  (Saruyama Decl. ¶ 2.)  Like many global companies, PFS at times assigns its employees to work at its foreign subsidiaries as expatriates on a temporary basis.  (Saruyama Decl. ¶ 8.)  Tsuchiyama was one such example, and although he was a PFS director, during the period of his assignment to Kuni's, he only worked in his capacity as Kuni's President, and not in his capacity as a director of PFS.  (Saruyama Decl. ¶ 10.)  It is not uncommon in a parent-subsidiary relationship to have employees of the parent be assigned to work for the subsidiary, but this fact alone is insufficient to determine that the two entities' labor relations are centralized in the absence of a showing that Tsuchiyama was acting in his capacity as PFS's director.  *Meng v. Ipanema Shoe Corp.*, 73 F. Supp. 2d 392, 403-404 (S.D.N.Y. 1999) (even where three parent company employees loaned to subsidiary controlled most of plaintiff's employment, court found no centralized labor relations where there was "no evidence that these officers acted for or on behalf of [the parent] in any capacity other than as [the subsidiary's] officers or that [parent] controlled [subsidiary] through their actions."); *see also Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 780-781 (5th Cir. 1997) (rejecting single employer liability based on the approval of a

RIF plan by three parent company employees working at the subsidiary where there was no evidence showing that these employees were not working in their capacities as the subsidiary's officers).  Indeed, Han's own pleading alleges that, "[u]pon information and belief, Takashi Tsuchiyama was charged by Kunio Ichinose to operate the Ikinari Steak chain stateside," indicating that Tsuchiyama's job was to act for Kuni's, not PFS.  (Compl. ¶ 34.)

As to Ichinose, he is a board member of Kuni's.  (Saruyama Decl. ¶ 11 and Ex. A.)  Accordingly, that Ichinose interviewed and approved of Han's hiring does not establish that PFS controlled Kuni's labor relations.  *See Balut v. Loral Elec. Sys.*, 988 F. Supp. 339, 346 (S.D.N.Y. 1997) (finding no centralized control of labor relations even though evidence suggested that parent company's president interviewed and offered plaintiff employment where it was "uncontroverted that when [the president] hired him, [the president] worked for [the subsidiary]."), *aff'd*, 166 F.3d 1199 (2d Cir. 1998); *Fenner* , 2013 WL 6244156, at *9 ("the fact that the Chairman of the Board of one company was Chairman of a separate company, without more, does not show that the second company was integrated with the first"); *Dewey*, 1995 WL 425005, at *2 (no centralized control where parent's employee served on the board of the subsidiary where there was no allegation that he acted against his position as subsidiary's board member).  In fact, Han alleges that PFS never responded to her complaint when she e-mailed to complain about her treatment.  (Compl. ¶ 47.)  This supports that PFS was not involved in labor disputes occurring at Kuni's.  *Dewey*, 1995 WL 425005, at *2 (the fact that plaintiff's complaint to parent regarding her termination was unanswered suggested lack of parent's control over subsidiary's labor relations).

In short, Han has plead no facts to show that PFS was the entity that engaged in the challenged employment decisions, namely, falsely promising her the high salary, failing to

13

promote her to General Manager, compensating her less than other male employees, or making comments about Han's immigration status.  In the absence of any claim that PFS is responsible for these employment decisions, the claim that the Defendants had a centralized control of labor relations necessarily fails.

The common management and commons ownership prongs of the test "'are less important as they represent ordinary aspects of the parent-subsidiary relationship' and 'the mere existence of common management and ownership are not sufficient to justify treating a parent corporation and its subsidiary as a single employer.'"  *Schade*, 2001 WL 709258, at *9; *Meng*, 73 F. Supp. 2d at 403 (same).  Again, Han may point to Tsuchiyama's and Ichinose's positions at PFS to attempt to establish common management, but "[t]hese executives' dual roles, without more, do not demonstrate that [PFS] exercised control over [Han's] employment.  The presumption is that 'corporate personalities remain distinct' and 'that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership.'"  *Fenner*, 2013 WL 6244156, at *11; *see also Dewey*, 1995 WL 425005, at *3 (finding no common management even where nine out of ten current and past board members of the subsidiary were employees of the parent because "[t]he fact that the directors of the subsidiary are all employees of the parent does not establish that the parent controls the subsidiary").

As to common ownership, it is undisputed that PFS is the parent and owner of Kuni's.  "Nevertheless, the two companies maintain independent finances, bank accounts, expenses and profit and loss statements.  This factor alone does not support a finding of centralized control."  *Fenner*, 2013 WL 6244156, at *12.  "[I]n the absence of any meaningful participation by [PFS] . . . in [Kuni's] employment and labor decisions, [its] ownership status with respect to

14

[Kuni's] is insufficient to consider the entities an integrated single employer for purposes of . . . Title VII." *Schade*, 2001 WL 709258, at *9.

The Complaint fails to allege facts sufficient to permit an inference that PFS and Kuni's constitute a single employer.  Accordingly, this Court lacks subject matter jurisdiction to hear this dispute against PFS.

### B.  PFS and Kuni's Are Not a Single Employer Under Rule 12(b)(6)

Even if this Court deems the allegations sufficient for jurisdictional purposes, the Complaint still fails to make out a plausible case for imposing single employer liability.  "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Chui-Fan Kwan*, 2018 WL 6655607, at *2, citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court "accepts as true the factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor."  *Id*.  But "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' are not accepted as true and 'do not suffice' to state a plausible claim." *Id*. citing *Iqbal*, 556 U.S. at 678.  While facial plausibility exists when the facts alleged permit a reasonable inference that defendant is liable for the alleged misconduct,  "[t]he plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief."  *Lehman*, 11 F. Supp. 3d at 414; *Ruiz*, 2019 WL 4601847, at *10 ("This standard demands 'more than a sheer possibility that a defendant has acted unlawfully.'")  "'Well-pleaded allegations must nudge the claim 'across the line from conceivable to plausible.'"  *Lehman*, 11 F. Supp. 3d at 414 citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In assessing the adequacy of its allegations, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Perez*, 2002 WL 31027580, at *2 (internal citation omitted). And while generally, courts may not look beyond the Complaint in deciding a 12(b)(6) motion, "[i]t is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6) . . . ." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998). This includes publicly filed documents. *Ruiz*, 2019 WL 4601847, at *10; *see also Wells Fargo Bank N.A. v. Wrights Mill Holdings*, LLC, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) ("Pursuant to [Fed. R. Evid.] 201, courts have considered . . . documents publicly filed with the SEC or FINRA, documents filed with a Secretary of State, documents filed with governmental entities and available on their official websites . . .").[4] In considering this aspect of the motion, the Court may not consider matters outside the Complaint, unless it is a matter of public record that may be judicially noticed.

In the Complaint, all that Han manages to allege is common ownership between Kuni's and PFS. But again, "the existence of a parent-subsidiary relationship is insufficient on its own to support a finding that the two entities are a single or joint employer for purposes of Title VII." *Brathwaite*, 2006 WL 8439237, at *4; *Collazo v. BBDO NY*, No. 96 Civ. 9507 (HB), 1997 WL 746447, at *3 (S.D.N.Y. Dec. 3, 1997), *aff'd*, 165 F.3d 13 (2d Cir. 1998) (affirming grant of Rule 12(b)(6) motion to dismiss parent company). A court need not hesitate to grant the motion where the plaintiff fails to allege facts sufficient to show the existence of the four single employer factors. *Ruiz*, 2019 WL 4601847, at *13-14; *Fried v. LVI Services, Inc.*, No. 10 Civ.

---

[4] In her Complaint, plaintiff alleges that "PFS is a SEC-registered foreign issuer whose shares are trading on NASDAQ coded 'KPFS" and relies on PFS's SEC filings to allege facts purportedly in support of the single employer theory. (Compl. ¶¶ 14, 34 n.5.) This Court may take judicial notice of PFS's SEC filings in construing this motion to dismiss under Rule 12(b)(6).

9308 (JSR), 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011).  While single employer status

has been described generally to be a question of fact not suitable for resolution on a motion to

dismiss, "where the four . . . factors are not adequately alleged in the pleadings, courts have ruled

that the plaintiffs may not pursue the single integrated employer theory."  *Stinson v. City Univ. of*

*New York*, No. 17-CV-3949 (KBF), 2018 WL 2727886, at *9 (S.D.N.Y. June 6, 2018).

As discussed above, Han fails to allege any meaningful facts in support of her single

employer liability theory.  Beyond conclusorily alleging that PFS had a plan to expand the

restaurant chain in the United States, she does not allege how the two companies' operations are

interrelated to accomplish this plan and does not allege the existence of any facts that bear on the

six factors discussed in *Schade v. Coty*.  And her attempt at making out the existence of

centralized control of labor relationship, the most important factor in this analysis, is limited to

the minimal overlap in personnel occasioned by Tsuchiyama's position as a director at PFS while

being assigned to act as Kuni's President, and Ichinose's role in interviewing Han.  But she

otherwise does not allege how PFS was involved in the day-to-day employment decisions at

Kuni's.  She does not allege that she was supervised by anyone at PFS, or that PFS determined

the employment terms and policies at Kuni's, such as by deciding Kuni's employees'

compensation or promotions.  The Complaint only alleges that Han was subjected to

discriminatory acts by those working at Kuni's.

*Fried v. LVI Services, Inc*. is directly on point.  There, this Court found "utterly without

merit" a similar action where the plaintiff sought to impose single employer status on

shareholders of the plaintiff's employer-entity based on allegedly discriminatory actions taken by

certain directors that the shareholders appointed on the board of that entity.  In granting

defendant's Rule 12(b)(6) motions to dismiss, the Court explained:

> It is a "well established principle of corporate law that directors
> and officers holding positions with a parent and its subsidiary can
> and do 'change hats' to represent the two corporations separate,
> despite their common ownership." *United States v. Bestfoods*, 524
> U.S. 5, 69, 118 S.Ct. 1876, 141 L.E.2d 43 (1998) (brackets and
> citations omitted). Notwithstanding plaintiff's conclusory
> allegations to the contrary . . . plaintiff has plead no facts to rebut
> the presumption that directors with affiliations to more than one
> corporation "change hats" in order to fulfill their obligations to
> each entity. In other words, when the representative directors took
> the alleged actions complained of in the Amended Complaint, they
> were acting in their capacities as board members of LVI Parent,
> not as employees or agents of Apollo/CHS.

2011 WL 2119748, at *5. The Court further found persuasive the fact that under Delaware law,

the laws of the state of the company's incorporation determined whether the corporate form will

be disregarded to impose liability on its shareholders, and that courts applying Delaware law

"have squarely rejected attempts to hold shareholders liable on a *respondeat superior* theory." *Id.*

So too here. Han alleges no facts to suggest that Tsuchiyama was acting in his capacity

as PFS's director in his interactions with Han. As to the allegation that Ichinose interviewed Han,

as noted above, Ichinose is a board member of Kuni's, which is a fact disclosed in Kuni's SEC

filing (Saruyama Decl. Ex. A) and thus, a matter that may be judicially noticed. Han alleges no

facts to suggest that, in interviewing Han, Ichinose was acting in his capacity as PFS's

President—nor would he have had to, since Han was not being interviewed to work for PFS.

The Complaint furthermore contains no allegation that Ichinose was involved in setting Han's

compensation, that he had any role in deciding that male employees would be paid better than

female employees, or that he made any remarks about Han's visa status. Inasmuch as Kuni's is a

Delaware corporation (Compl. ¶ 11), Han's attempt to hold Kuni's shareholder liable for the acts

of Kuni's should be denied. *See also Brathwaite*, 2006 WL 8439237, at *4 (holding that

allegations of parent-subsidiary relationship and the fact that parent's COO is the chairman and

CEO of the subsidiary "do not indicate a centralized control" or "an involvement with the alleged discrimination").

In sum, "[Han] here does not allege that employees of [Kuni's] were subjected to the same employment policies, supervised by the same individuals, or paid by the same people using the same payroll methods.  In short, the [Complaint] fails to provide factual support for its conclusory allegations of centralized operations and control, and 'entirely leave[s] out the relationship that plaintiff[], as employee[], had to the . . . locations besides the one location at which plaintiff[] actually worked.'"  *Chui-Fan Kwan*, 2018 WL 6655607, at *4 (citation omitted). The Court should reject Han's theory of single employer liability and dismiss the Complaint as to PFS.

### C.  PFS and Kuni's Are Not Joint Employers Under Either Rule 12(b)(1) or Rule 12(b)(6)

The Complaint only advances the single employer theory and fails to give any notice that Han is pursuing the joint employer theory of liability.  She also does not allege any facts that bear on this theory.  To the extent that Han seeks to render PFS liable as a joint employer, the attempt is futile as a matter of law.

In contrast to the single employer theory, a joint employer relationship assumes that the employers are two separate entities, but that they handle certain aspects of the employment relationship jointly.  *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005). "Where this doctrine is operative, an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer."  *Id.*  "To determine whether an entity can be considered a joint

19

employer, courts evaluate 'whether the alleged [joint] employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."'" *Urena v. Swiss Post Sols., Inc.*, No. 16 Civ. 1998 (LGS), 2016 WL 5173389, at *4 (S.D.N.Y. Sept. 21, 2016) (citation omitted); *see also Lima v. Addeco*, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009) ("courts look at 'commonality of hiring, firing, discipline, pay, insurance, records, and supervision' to determine whether an entity is a joint employer"). The "'essential element'" in this inquiry is "'sufficient evidence of immediate control over the employees.'" *Urena*, 2016 WL 5173389, at *4 (citation omitted).

Applying the above test, PFS is not a joint employer with Kuni's. It is not alleged that PFS has the authority to hire and fire Kuni's employees; that PFS supervises or controls the work schedules or conditions of Kuni's employees; that PFS determines the compensation of Kuni's employees; or that PFS maintains Kuni's employment records. The sole allegation pertaining to the acts of Tsuchiyama/Ichinose, who had dual roles at PFS and Kuni's, is insufficient to establish joint employer status because nothing is alleged to suggest that either of them were wearing their PFS hats when they engaged in the alleged conduct. *See Fried*, 2011 WL 2119748, at *5; *Meng*, 73 F. Supp. 2d at 403-404; *Lusk*, 129 F.3d at 780-781. In the absence of any factual allegations bearing on these or the remaining factors, Han fails to nudge her claim across the line from conceivable to plausible.

### D. PFS is not Han's Employer Under the NYSHRL or the NYCHRL Under Either Rule 12(b)(1) or Rule 12(b)(6)

As noted above, some courts have applied the same test under federal law to claims under the NYSHRL/NYCHRL to determine whether two companies operated as a single employer. *See*, *e.g.*, *Turley*, 774 F.3d at 156 ("Applying the test under both federal and state statutes serves

the stated goal of the New York Court of Appeals 'to resolve federal and state employment discrimination claims consistently.'") (Citation omitted).  To the extent that the test is the same, the discussion above disposes of the state and city law claims.  However, other courts have applied a different test for employer liability under the NYSHRL and NYCHRL, as demonstrated below.  Even under this separate test, Han fails to establish that PFS is her employer.

Recently, the New York Court of Appeals adopted the following elements in determining whether a plaintiff had an employment relationship with the defendant: "'(1) the selection and engagement of the servant; (2) the payment of salary or wages; (3) the power of dismissal; and (4) the power of control of the servant's conduct.'"  *Griffin v. Sirva, Inc.*, 29 N.Y.3d 174, 186 (2017) (adopting test in response to certified question) citing *State Div. of Human Rights v. GTE Corp.*, 109 A.D.2d 1082, 1083 (4th Dep't 1985); *see also Popat v. Levy*, 253 F. Supp. 3d 527, 543 (W.D.N.Y. 2017) (recognizing *Griffin v. Sirva, Inc.*'s affirmance of four-pronged test in *State Div. of Human Rights v. GTE Corp*. and granting motion to dismiss NYSHRL claim).  The most important factor is the last one: whether the proposed employer exercised control over the employee's work performance.  *Griffin*, 29 N.Y.3d at 186.  The same test applies to determine whether an entity is the aggrieved employee's employer under the NYCHRL.  *Urena*, 2016 WL 5173389, at *3; *Robins v. Max Mara, U.S.A., Inc*., 923 F. Supp. 460, 471 (S.D.N.Y. 1996).

Similar to the analysis under the joint employer test, the Complaint's allegations are wholly deficient because it does not allege that PFS had the power to select or engage Kuni's employees; that PFS paid their salaries or wages; that PFS had the power to terminate them; or that PFS otherwise had any control over their conduct or terms of employment.  The NYSHRL and NYCHRL claims should be dismissed against PFS.

**POINT II**

**THE TITLE VII CLAIM MUST BE DISMISSED BECAUSE
HAN FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES**

PFS also moves under Rule 12(b)(6) to dismiss Han's Title VII claim for her failure to exhaust administrative remedies.  "A prerequisite to commencing a Title VII action against a defendant is the filing with the EEOC or authorized state agency of a complaint naming the defendant."  *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991) citing 42 U.S.C. § 2000e-5(e). A plaintiff cannot file a civil action against a previously unnamed defendant to her discrimination claims because that defendant has been denied early notice and the opportunity for voluntary compliance with Title VII in avoidance of litigation.  *Darden*, 191 F. Supp. 2d at 389.  Thus, the general rule is that a plaintiff's Title VII lawsuit may not proceed if she failed to name the defendant in the EEOC charge.

In this case, Han attaches as Exhibit A to her Complaint the EEOC's right-to-sue notice dated May 13, 2019 granting her permission to pursue the claim in court.  (Compl. Ex. 1.)  It only identifies Kuni's as the defendant and does not name PFS.  Since Han failed to name PFS in her EEOC charge, it follows that she may not pursue the Title VII claim against PFS for failure to exhaust her administrative remedies.

A limited exception to the general rule exists if the "identity of interest" exception applies. "The 'identity of interest' exception permits Title VII actions to proceed against parties who were not named in the plaintiff's EEOC charge 'where there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge.'"  *Ruiz*, 2019 WL 4601847, at *11, citing *Johnson*, 931 F.2d at 209.  But the application of this exception is unwarranted in this case because Han was represented by her current counsel, Ge (Richard) Qu, on her charge to the EEOC.  (Compl. Ex. 1.)  As courts have explained, "[t]he purpose of this

exception is to avoid frustration of Title VII's remedial goals by accommodating plaintiffs who are not well versed in the statute's procedural formalities and requirements." *Darden*, 191 F. Supp. 2d at 389 (collecting cases). "Courts therefore routinely decline to apply the identity of interest exception where complainants were represented by counsel familiar with the applicable law when they filed their EEOC charge." *Ruiz*, 2019 WL 4601847, at *11 (collecting cases). This rule precludes the application of the identity of interest exception in this case.

Even if the above rule does not bar Han's Title VII claim against PFS, the claim should still be dismissed because Han fails the four-factor test set out in *Johnson v. Palma* to determine whether there is a clear identity of interest:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

931 F.2d at 209-210 (internal citation omitted). No one factor is dispositive. *Ruiz*, 2019 WL 4601847, at *11.

First, Han was fully aware of PFS's relationship with Kuni's at the time she filed her EEOC charge. Her Complaint alleges that she was interviewed by the President of PFS and that she even wrote an e-mail to PFS to complain about her allegedly discriminatory treatment. The first factor plainly weighs in PFS's favor.

The second factor also weighs in PFS's favor. The Complaint does not allege any facts to indicate that Kuni's and PFS's interests are so similar, or that they were so intertwined. *See*

*Goodman v. Port Authority of N.Y. and N.J.*, 850 F. Supp. 2d 363, 384-385 (S.D.N.Y. 2012) (analyzing question by applying the four-factor single employer test, and refusing to apply exception where plaintiff pled facts indicating that two entities were integrated in management and had interrelated operations but no facts showing common ownership or financial control or degree of centralization as to control of labor relations); *Perez*, 2002 WL 31027580, at *7 (finding no similarity in interest where international union had no control over local union's personnel decisions).  The fact that the Defendants are a parent and subsidiary alone does not provide the requisite similarity absent a showing that the interests of PFS and Kuni's were so intertwined.  *Darden*, 191 F. Supp. 2d at 390 (finding that foreign parent company's "interests are distinct from those of domestic [subsidiary] corporations"); *Ruiz*, 2019 WL 4601847, at *12 (finding allegations of similar interests between New Avon and its minority shareholder Avon Products to be conclusory).

The third factor favors Han to the extent that courts have found the unnamed party suffers no prejudice where the EEOC did not investigate or take any action in response to the charge. *Ruiz*, 2019 WL 4601847, at *12.  "Nevertheless, courts have declined to apply the identity of interest exception at the motion to dismiss stage, even in the absence of actual prejudice."  *Id*.; *Ayala v. U.S. Postal Serv.*, No. 15-CV-4919 (VSB), 2017 WL 1234028, at *5 (S.D.N.Y. Mar. 31, 2017) (exception not applicable where all but the third factor was in favor of defendant).

Finally, the fourth factor favors PFS.  Nowhere in her Complaint does Han allege that PFS represented to her that its relationship to her would be conducted exclusively through Kuni's.

In sum, the *Johnson* factors militate against applying the identity of interest exception. Accordingly, this Court should dismiss the Title VII claim as against PFS with prejudice for Han's failure to exhaust her administrative remedies.

24

## CONCLUSION

Pepper Food Service Co. Ltd. respectfully requests that its motion to dismiss be granted, and that the Complaint be dismissed against it with prejudice.

Dated: New York, New York
January 31, 2019

**INGRAM YUZEK GAINEN CARROLL &
BERTOLOTTI, LLP**

By: s/ Mioko C. Tajika
    Mioko C. Tajika
150 East 42nd Street, 19th Floor
New York, NY 10017
Telephone: (212) 907-9600
Fax: (212) 907-9681
mtajika@ingramllp.com
*Attorneys for Defendant Pepper Food Service Co.
Ltd.*